IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| GLORIA BOYER,<br><br>    *Plaintiff*,<br><br>v.<br><br>SCI SHARED SERVICES, INC., d/b/a MACON MEMORIAL PARK FUNERAL HOME AND CEMETERY; GEORGIA CEMETERY SERVICES, LLC; DAVID ASBELL; JOHN DOE; and JOHN DOE, INC.<br><br>    *Defendants.* | CIVIL ACTION NO.<br>5:22-cv-00118-TES |

## ORDER REMANDING CASE TO STATE COURT

Following removal of this action from the State Court of Bibb County, Georgia, Plaintiff Gloria Boyer seeks to amend her Complaint [Doc. 1-2] and remand her case back to that court.

### A.   Introduction

Although Boyer's Motion to Amend [Doc. 15] is first in time on the Court's docket, it must yield to her Motion to Remand [Doc. 16] "because a federal court is powerless to act" in a case unless it has subject-matter jurisdiction. *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). Without it, the Court cannot touch Boyer's Motion to Amend. But first, what is this case about?

According to Boyer's Complaint, on June 18, 2020, she was attending a funeral service at Macon Memorial Park Funeral Home and Cemetery where she tripped over a protruding root covered by carpet and fell into an open grave. [Doc. 1-2, ¶ 10]; [Doc. 1-21, Browne Decl., p. 4]. Now, she's suing the funeral home, one of its funeral directors, and a grave digging company for negligence to recover for her physical and emotional injuries. [Doc. 1-2, ¶¶ 10, 16–25]; [Doc. 16, p. 5]. Given that Boyer's Complaint doesn't plead jurisdiction under a specific statutory grant or federal-question jurisdiction pursuant to 28 U.S.C. § 1331, the only way the Court can decide anything in her case is if it has diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See McQueary v. Child Support Enf't*, 812 F. App'x 911, 913 (11th Cir. 2020) (quoting *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997)).

B.     **Diversity Jurisdiction**

Diversity jurisdiction permits federal courts to hear matters unrelated to the Constitution, laws, or treaties of the United States where "the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different States." 28 U.S.C. § 1332(a). This type of jurisdiction requires "complete diversity," meaning that no defendant can be a citizen from the same state as Boyer. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) ("Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant."). Boyer says that she

isn't diverse from every defendant she's trying to sue so the Court should remand her case back to state court. [Doc. 16, p. 4].

In this case, two of Boyer's chosen defendants are business entities—adding a tiny, but easily smoothed, wrinkle to the remand issue before the Court. Boyer is of the impression that Congress's treatment of corporations governs the citizenship determinations to be made in this case, but she's dead wrong. *See, e.g.*, [Doc. 16, p. 3]. Common law—not statutory law—governs how the citizenship of unincorporated entities is determined. *See generally Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020 (11th Cir. 2004). Relying on this common law, the funeral home and David Asbell, one of its funeral directors removed Boyer's case to federal court.[1] [Doc. 1, p. 9]. Therefore, they bear the burden of establishing the citizenship of the parties.[2] *Rolling Greens*, 374 F.3d at 1022.

Before turning to whether they meet their burden, the Court pauses to note one thing. Boyer's Motion to Remand includes arguments centered around a third business

---

[1] The other business entity Boyer names in her Complaint, Georgia Cemetery Services, LLC, consented to their removal of this action. [Doc. 1, p. 9].

[2] As noted in the latter portion of this Order, Boyer's arguments only focused on her contention that the parties aren't diverse; she never mentioned § 1332's amount-in-controversy requirement. But, diversity of citizenship isn't the only jurisdictional requirement with which the Court must be concerned—even, when as in this case, the parties don't seem to focus on both. A defendant who removes a case to federal court based on diversity jurisdiction bears the burden, at the time of removal, to prove both elements: diversity of citizenship and amount in controversy. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010) ("A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later.").

3

entity that she seeks to add as a defendant via her Motion to Amend. *See* [Doc. 16, p. 2]. As the Court stated above, Boyer's Motion to Amend and, more specifically, the contents of how she wants to amend her Complaint or who she seeks to add as a defendant cannot be considered unless and until the Court determines that it has subject-matter jurisdiction. Thus, the *only* citizenships the Court can rely on for determining whether diversity jurisdiction existed at the time of removal are the citizenships of the parties Boyer names in her Complaint. The citizenship of this third business entity is not and cannot be considered in the Court's analysis.

### C.      The Parties' Citizenships

That said, let's get to their burden of establishing the parties' citizenships. First, there's Boyer's. Determining her citizenship is easy. In her Complaint, she alleges that she is a resident and citizen of Bibb County, Georgia, and none of the removing defendants dispute this. [Doc. 1-2, ¶ 1].

Second, there's the citizenship of the funeral home. To determine its citizenship, the Court looks to its corporate structure. Boyer's Complaint names "SCI Shared Services, Inc. d/b/a Macon Memorial Park Funeral Home and Cemetery" as one of her defendants. [*Id.* at ¶ 2]. However, Janet Key, the Senior Legal Assistant and Secretary for this business, states that its correct legal name is "SCI Shared Resources, LLC" and that it's a subsidiary of Service Corporation International ("SCI"). [Doc. 19-2, Key Decl., ¶ 3]. Key, who is familiar with the corporate structure of SCI as well as its indirect

4

subsidiaries, also clarifies that there is no business entity legally recognized as "Macon Memorial Park Funeral Home and Cemetery" in the State of Georgia. [*Id.* at ¶ 4]. The actual cemetery property where Boyer fell is owned and operated by Alderwoods (Georgia), LLC—a limited liability company. [*Id.* at ¶¶ 3–6]. And, according to Key, the only member of Alderwoods (Georgia) is Alderwoods Group, LLC, and the sole member of Alderwoods Group[3] is SCI. [*Id.* at ¶ 6].

Although SCI's corporate structure makes determining Alderwoods (Georgia)'s citizenship not as easily discernable as Boyer's, it's not out of reach. As a limited liability company, Alderwoods (Georgia) "is a citizen of any state of which a member of the company is a citizen." *Rolling Greens*, 374 F.3d at 1022. Based on Key's declaration, SCI's citizenship is the proper focus. SCI is a corporation incorporated under the laws of the State of Texas with its principal place of business in Houston, Texas. [Doc. 19-2, Key Decl., ¶ 7]. Thus, Alderwoods (Georgia)—or SCI—is a citizen of Texas.

Next, there's the citizenship of the grave digging company—Georgia Cemetery Services, LLC ("GCS"). [Doc. 1-2, ¶ 3]. To aid in determining GCS's citizenship, its chief financial officer, Shane Reedy, states that GCS is comprised of only two member-managers—both of whom are domiciled in Austin, Texas. [Doc. 19-2, Reedy Decl., ¶¶ 2,

---

[3] Alderwoods Group is the third business entity that Boyer hopes to bring into her lawsuit via her Motion to Amend, but it doesn't appear that its inclusion would make any difference in the Court's ultimate findings. *See* [Doc. 16, pp. 2, 7–8]. As the Court said, though, it will not consider Alderwood Group's citizenship in determining whether complete diversity exists for purposes of Boyer's Motion to Remand because she did not name it in her Complaint. Even if she would have, it's clear that Alderwoods Group would also be a citizen of Texas.

5

4–5]. As a limited liability company, GCS—like Alderwoods (Georgia)—"is a citizen of any state of which a member of the company is a citizen." *Rolling Greens*, 374 F.3d at 1022. Thus, GCS is also a citizen of Texas.

Finally, there is the citizenship of Asbell and the "John Doe" and "John Doe, Inc." defendants Boyer names in her Complaint. [Doc. 1-2, ¶¶ 4–5]. However, "the citizenship of defendants sued under fictitious names shall be disregarded" when determining whether a district court has jurisdiction under 28 U.S.C. § 1332(a). 28 U.S.C. § 1441(b). Thus, the citizenships of "John Doe" and "John Doe, Inc.," have no bearing on whether all defendants are diverse from Boyer, and the Court need only focus on Asbell's citizenship for the remainder of its analysis.

In her Complaint, Boyer alleges that Asbell works for the funeral home where she attended the funeral and burial service and that he is a resident of Bibb County, Georgia. [Doc. 1-2, ¶¶ 4, 10]; *see also* [Doc. 1-20, Asbell Decl., ¶ 4 (Asbell's admission that he is a citizen of Georgia)]. So, with Asbell's citizenship determined, what's the "complete diversity" make up for this case? The plaintiff, Boyer, is from Georgia. Alderwoods (Georgia) is from Texas. GCS is from Texas. Asbell, however, is from Georgia. For all intents and purposes, Asbell's inclusion in this lawsuit destroys the "complete diversity" requirement since he and Boyer are both from Georgia. *See Triggs*, 154 F.3d at 1287. However, he contends that Boyer only chose to include him in her lawsuit for that exact purpose—to destroy diversity so that a federal court couldn't hear

6

it. Relying on the fraudulent-joinder doctrine, Asbell argues that his citizenship should be disregarded. [Doc. 1, p. 2].

### D.     **Fraudulent Joinder**

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs*, 154 F.3d at 1287. If Asbell can show that this exception is applicable to him, then Boyer's case can still be removed to federal court despite the fact that both of them are Georgia citizens. *Id.* The Eleventh Circuit recognizes three instances in which joinder of a non-diverse party can be deemed fraudulent. *Id.* The first instance occurs when there is no possibility that the plaintiff can prove a cause of action against the non-diverse defendant.[4] *Id.* (citation omitted). "The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts." *Id.* And finally, the third instance involves a situation "where a diverse defendant is joined with a [non-diverse] defendant as to whom there is no joint, several[,] or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the [non-diverse] defendant." *Id.* Here, there is no suggestion that the second instance is relevant to the remand issue before the Court. *See* [Doc. 1, pp. 2–3]; [Doc. 19, pp. 6–8]; [Doc. 16, pp. 4–6].

---

[4] As stated above, GCS consented to and joined SCI and Asbell in their removal efforts, *see* n.1, *supra*, and in their brief opposing remand, GCS also argues that Boyer does not have a cause of action against it. [Doc. 19, pp. 5–6]. However, GCS's citizenship is Texas; thus, there is no reason to discuss whether GCS can avail itself of the fraudulent-joinder doctrine. Whether Boyer can state a claim against GCS is (as it recognized in briefing) an issue better poised for arguments outside of the instant remand issue before the Court. [*Id.*].

Before turning to Asbell's arguments, the Court pauses to note a few things. "If there is *even a possibility*" that a state court would find that the complaint states a cause of action against the non-diverse defendant, then the federal court "must find that the joinder was proper and remand the case . . . ." *Triggs*, 154 F.3d at 1287 (citation omitted). Along that line, there is no requirement that the plaintiff have a winning case against the non-diverse defendant. *Id.* The plaintiff "need only have a *possibility* of stating a valid cause of action in order for the joinder" of the non-diverse defendant "to be legitimate." *Id.* When evaluating the presence or absence of a cause of action against the non-diverse defendant, district courts must evaluate the factual allegations in the light most favorable to the plaintiff, and they must resolve any uncertainties about state substantive law in the plaintiff's favor. *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (citation omitted). These determinations are largely based on the plaintiff's allegations at the time of removal, but district courts may also consider other materials submitted by the parties. *See id.*

Having made note of those things, the Court now turns to why Asbell says that "there is no possibility that [Boyer] can state a cause of action for negligence against [him]." [Doc. 1, p. 2]. Consistent with Boyer's allegation in her Complaint, Asbell admits that he is a funeral director for SCI. [Doc. 1-2, ¶¶ 27–29]; [Doc. 1-20, Asbell Decl., ¶ 5]. However, and critically, Asbell states that he wasn't the funeral director handling the service at which Boyer injured herself. [Doc. 1-20, Asbell Decl., ¶ 8]. In fact, at the time

8

Boyer injured herself, he states that he was working at Snow's Memorial Chapel—another local funeral home owned by SCI. [*Id.* at ¶ 5]. Thus, he didn't direct or supervise the visitation, service, or burial at which Boyer injured herself. [*Id.* at ¶ 8]. He didn't arrange or conduct the service or assist others with it. [*Id.*]. He wasn't even present at Macon Memorial Park Funeral Home and Cemetery when Boyer injured herself. [*Id.* at ¶ 9]. Bottom line, he wasn't involved at all. [*Id.* at ¶ 8].

Still though, Boyer is suing Asbell for run-of-the-mill, state-law negligence. *See generally* [Doc. 1-2]. And even though she didn't cite to a single Georgia statute in her Complaint relative to her negligence claim, her allegation that Asbell "had a duty to . . . invitees" makes clear that she's suing him under O.C.G.A. § 51-3-1. [Doc. 1-2, ¶ 28]. Under that statute,

> [w]here an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

O.C.G.A. § 51-3-1.

For a state court to find that a cause of action exists against Asbell, he—by the plain language of the statute—has to be the owner or occupier as interpreted by Georgia courts. As one of seven funeral directors employed by SCI, Asbell doesn't set policies for Macon Memorial Park Funeral Home and Cemetery nor is he "in charge of or personally responsible for performing any repairs or maintenance" for that location. [Doc. 1, p. 2 (noting that "SCI employs [six other] funeral directors)]; [Doc. 1-20, Asbell

9

Decl., ¶¶ 6, 11]; [Doc. 19, p. 7]. He simply earns an hourly wage for carrying out non-managerial duties. [Doc. 1-20, Asbell Decl., ¶ 6]. In other words, he doesn't own or occupy Macon Memorial Park Funeral Home and Cemetery for purposes of liability under O.C.G.A. § 51-3-1, SCI does. [*Id.* at ¶ 7].

The Georgia Supreme Court has made it clear that "one hired by an owner or occupier to perform even the top managerial job duties on a particular premises does not assume the statutory legal duties imposed upon 'owners and occupiers' under Georgia premises liability law." *Joy v. Wal-Mart Stores East, LP*, No. 1:20-CV-04309-WMR, 2021 WL 2562146, at *3 (N.D. Ga. Mar. 23, 2021). The unrebutted contents of Asbell's declaration demonstrates that his duties as a funeral director don't place him within the "top managerial" category. [Doc. 1-20, Asbell Decl., ¶¶ 6–11]. Without agreeing to "assume complete control and custody of the subject premises[,]" Asbell cannot "be charged with the legal duties imposed upon an 'owner or occupier'" when it comes to premises liability. *Joy*, 2021 WL 2562146, at *3.

Aimed specifically at the Georgia Supreme Court's requirements necessary to hold an individual liable as an "owner or occupier" under Georgia law, Asbell states that he has "never agreed to accept complete control or custody of" Macon Memorial Park Funeral Home and Cemetery. [Doc. 20-1, Asbell Decl., ¶ 10]. If, perhaps, there is some individual employed by SCI at Macon Memorial Park Funeral Home and Cemetery that could satisfy the "top managerial" category, there's a glaring possibly

that Georgia law still wouldn't hold that individual liable under its premises liability laws. *See Joy*, 2021 WL 2562146, at *3. "Although employers are responsible for some torts committed by their employees that are within the scope of the employer's business, Georgia [law] do[es] not recognize the reverse of that principle." *Id.* at *4 (citation omitted); *see also Leal v. Hobbs*, 538 S.E.2d 89, 91 (Ga. Ct. App. 2000) (holding that "[t]he doctrine of vicarious liability does not make the agent liable for the acts of the principal[]"). In sum, "[e]mployees are not responsible for the tortious acts of their employers." *Joy*, 2021 WL 2562146, at *4 (citing *Catlett v. Wyeth, Inc.*, 379 F. Supp. 2d 1374, 1382–83 (M.D. Ga. 2004)). To whatever extent Georgia law may hold some other funeral director liable for Boyer's injuries, that's a bridge to be crossed if, or when, she amends her Complaint.

Sure, SCI's funeral directors may, among other things, be tasked with arranging and conducting funeral and memorial ceremonies and supervising or assisting in funeral services by "assisting at the cemetery," but Asbell has made it palpably clear that he's not the individual with whom Boyer should be concerned. [Doc. 16, p. 5]; [Doc. 1-20, Asbell Decl., p. 5 (detailing job responsibilities of a funeral director for SCI)]. Plain and simple, when it comes to Asbell, there is no uncertainty as to whether Boyer can maintain a cause of action against him under Georgia law. She can't. *See Crowe*, 113 F.3d at 1538.

11

To that end, Boyer confidently says, "Learn it now or learn it later, at least one of [Macon Memorial Park Funeral Home and Cemetery's] funeral directors *could* be responsible for . . . Boyer's [allegedly] significant injuries." [*Id.* at p. 6 (emphasis added)]. Even assuming, without deciding, that Georgia law may tilt Boyer's "could be" assumption in her favor—that funeral director, whomever he or she may be, wasn't Asbell. Thus, at the time Boyer filed her Complaint or at the time of removal, that phantom funeral director was not a party to this lawsuit, and the citizenship of some unknown, non-party cannot destroy diversity. *Harper v. LM Gen. Ins. Co.*, No 5:21cv115-TKW-MJF, 2021 WL 2840458, at *2 (N.D. Fla. July 6, 2021).

Looking at Boyer's Complaint, there is no possibility that she could prove a cause of action against Asbell, and truth be told, she admits as much in her Motion to Remand. *Triggs*, 154 F.3d at 1287. She says, "[r]egardless of whether . . . Asbell or some other funeral director was involved in the funerary services [she] attended, this Court is or will be divested of subject[-]matter jurisdiction because of that fact." [Doc. 16, p. 6]. For now, though, that isn't the case.

Succinctly put, Asbell was improperly joined to defeat diversity jurisdiction. As such, his Georgia citizenship is no longer considered in the Court's determination of whether complete diversity exists between Boyer and the defendants she seeks to sue. Boyer is from Georgia, and Alderwoods (Georgia) (or SCI) and GCS are both citizens of Texas. Right now, there *is* complete diversity in this case as required by § 1332(a)(1).

Accordingly, the Court cannot remand Boyer's case on the basis that diversity of citizenship is lacking.

### E. Amount in Controversy

Diversity of citizenship, however, as outlined above, isn't the only requirement for diversity jurisdiction. In addition to citizenship requirements, "the matter in controversy [must] exceed[] the sum or value of $75,000[.]" *Id.* at § 1332(a). Just as with proving the parties' citizenship, the party removing a case from state to federal court bears the burden of proving that this jurisdictional threshold is met. *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001). If a plaintiff does not state a specific amount of damages in her complaint, removal is proper where it is apparent its face that the amount in controversy would exceed $75,000. *Id.* And, when the amount in controversy is not apparent from the face of the complaint, the Court may look to the notice of removal and may even request additional evidence regarding the amount in controversy. *Id.*

In some instances, a plaintiff may "make[] an unspecified demand for damages in state court." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (citation omitted). When that happens, the removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds $75,000. *Id.* In ascertaining whether an action does, the Court may "make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings" and

should use "judicial experience and common sense," rather than "suspend reality." *Id.* at 1061–62 (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754, 770 (11th Cir. 2010)). Finally, removal is generally unfavored; therefore, any "ambiguities are generally construed against [it]." *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1329 (11th Cir. 1998).

To guide district courts on the amount-in-controversy issue, the Eleventh Circuit unequivocally held that "[i]f the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction. If not, the court must remand. Under this approach, jurisdiction is either evident from the removing documents or remand is appropriate." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1211 (11th Cir. 2007).

In her Motion to Remand, Boyer didn't argue that her case wasn't likely to exceed $75,000. Why would she? Such an argument could lead to judicial estoppel issues down the line. Boyer's arguments in her Motion to Remand focus purely on citizenship and fraudulent joinder, and SCI, Asbell, and GCS's opposing arguments responded accordingly. Save for setting up § 1332's requirements, the briefing for and against remand is silent when it comes to the amount-in-controversy requirement. *See* [Doc. 19, p. 1]. However, this silence doesn't mean that the Court gets to happily whistle past the graveyard and forget about its independent obligation to examine § 1332's requirements in full. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

Moreover, it's not as if arguments regarding the amount-in-controversy requirement are completely lacking in the record. The Notice of Removal [Doc. 1] is chock full of reasons why SCI, Asbell, and GCS believe the jurisdictional threshold is satisfied. For the Court to just blindly accept those reasons without any independent inquiry on its own would be wrong. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (reaffirming the well-established principle that courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party[]"). Just because parties may decide to discuss only one of the two requirements for diversity jurisdiction, their decision to do so doesn't bury the Court's inability—its obligation—to carefully examine unaddressed jurisdictional questions. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("Courts . . . must raise and decide jurisdictional questions that the parties either overlook or elect not to press."). The Court's failure to independently assess whether the amount-in-controversy requirement is met in this case would—based on the complete diversity among the parties—mean that the Court improperly kept this case.

  First, with deference to how courts determine whether the jurisdictional threshold is met, Boyer's Complaint is absolutely of no help, facially. Its "Damages" portion (in a pleading practice certainly not condoned by the Court) doesn't list a single dollar amount. Instead, Boyer claims that "[a]s a direct and proximate result" of her falling into the open grave, she "has suffered and continues to suffer damages

including, but not limited to, medical expenses, lost wages, personal injuries, and past, present, and future pain and suffering . . . ." [Doc. 1-2, ¶ 38]. So, to determine whether Boyer's lawsuit is likely to exceed $75,000, the Court is left to look to the Notice of Removal and other documents in the record. *Williams*, 269 F.3d at 1319; *Lowery*, 483 F.3d at 1211.

In attempting to meet their burden, SCI, Asbell, and GCS point out that Boyer's attorney sent a demand letter to SCI "providing [it] a reasonable opportunity to promptly settle [Boyer's] claims . . . for $5,000,000[.]" [Doc. 1, p. 4]; [Doc. 1-21, Browne Decl., p. 4]. As a general matter, pre-suit settlement offers, like this one, may constitute another document from which the Court may ascertain whether a case has been properly removed. *Lowery*, 483 F.3d at 1214 & n.66. While they may be entitled to some weight, how much, though, depends on the circumstances. *Maisonneuve v. Quiktrip Corp.*, No. 1:15-CV-02603-ELR, 2015 WL 12645741, at *1 (N.D. Ga. Oct. 20, 2015). As SCI, Asbell, and GCS note, there are several instances where judges in the Middle District of Georgia chose not to ignore evaluations of a claim's value expressed in a demand letter. [Doc. 1, pp. 4–5]; *see, e.g.*, *Peterman v. Wal-Mart Stores Inc.*, No. 1:13–cv–91 (WLS), 2013 WL 5210188, at *2 (M.D. Ga. Sept. 13, 2013) ("Peterman's complaint, along with her demand letter, establish that the amount in controversy exceeds $75,000."); *S. Ins. Co. of Va. v. Karrer*, No. 3:10-CV-84 (CAR), 2011 WL 1100030, at *4 (M.D. Ga. Mar. 22, 2011) ("The Court will not ignore [the] evaluation of the . . . claim expressed in a demand

letter."). However, the Court has, in one previous instance, already held that "[s]ettlement offers 'commonly reflect puffing and posturing[] and are therefore entitled to little weight in measuring the preponderance of the evidence.'" *Parker v. Wal-Mart Stores East LP*, No. 5:18-cv-00440-TES, 2019 WL 413560, at *2 (M.D. Ga. Feb. 1, 2019) (quoting *Maisonneuve*, 2015 WL 12645741, at *1). Such holding, though, isn't inconsistent with how some other district courts in the Eleventh Circuit view settlement demands—it's simply a case-by-case determination. *See, e.g.*, *Jackson v. Wal-Mart Store, Inc.*, 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009).

In this case, Boyer fell into the open grave on June 18, 2020. [Doc. 1-2, ¶ 10]. As of August 4, 2021, her medical expenses (nearly half of which stem from 20 psychotherapeutic appointments) only totaled $7,847.00. [Doc. 1-21, Browne Decl., pp. 4–5, 9]. Had her settlement offer—made just over a year after her incident—reflected a more reasonable "ask" in light of her relatively low medical expenses, the Court might've been inclined to give it more weight. It's not that the Court chose to ignore Boyer's settlement offer; it just doesn't rely on it to find that removal of her case was proper.

Finally, in addition to Boyer's demand letter, SCI, Asbell, and GCS cling to her allegation that she has "suffered traumatic physical and traumatic emotional injuries." [Doc. 1, p. 4 (quoting [Doc. 1-2, ¶ 37])]. Of course, the Court considered the aftermath of what Boyer's fall has apparently caused her. Even with those things—her

17

embarrassment, her alleged decreased in activities as a 75-year-old woman, her inability to drive, and her mood spiraling, just to list a few—the Court still, in relying on its "judicial experience and common sense," isn't persuaded that SCI, Asbell, and GCS have met their burden of proving that the amount in controversy more likely than not exceeds $75,000. *Roe*, 613 F.3d at 1062; *see also* [Doc. 1-21, Browne Decl., pp. 8–9]. In fact, Boyer's Licensed Clinical Social Worker reported that as of July 2021, Boyer had resolved most of the trauma-related symptoms. [Doc. 1-21, Browne Decl., p. 9].

The Court has remanded cases where the medical expenses far exceed Boyer's. *See, e.g.*, *Parker*, 2019 WL 413560, at *1, *3 (remanding case where medical expenses totaled "at least $30,440.19" for slip and fall); *Premusca v. DKC Transp., LLC ("Premusca I")*, No. 5:22-cv-00005-TES, 2022 WL 254341, at *1–2 (M.D. Ga. Jan. 26, 2022) (remanding case where medical expenses were $24,304.22 at the time of removal); *Premusca v. DKC Transp.*, No. 5:22-cv-00006-TES, 2022 WL 252177, at *1–2 (M.D. Ga. Jan. 26, 2022) (same but for $19,857.10). As in those cases, the bottom line here is that the uncertainty as to whether Boyer can close more than a $67,000 gap in damages is too speculative. Boyer only seeks to "obtain a judgment . . . in a sufficient amount to *compensate* her for her injuries and damages[.]" [Doc. 1-2, p. 9 (emphasis added)]. Her Complaint does not specifically seek an award for punitive damages, and this fact, weighs strongly in favor of remand. *Premusca I*, 2022 WL 254341, at *2.

Obviously, based on *Roe*'s permissive use of reasonable deductions, reasonable inferences, or other reasonable extrapolations from Boyer's Complaint and the other documents included in their Notice of Removal, SCI, Asbell, and GCS want the Court to find that Boyer's case likely exceeds the requisite jurisdictional amount. 613 F.3d at 1061–62. While that's certainly one avenue, "nothing in *Roe* permits [a] court to indulge in speculation or fill empty gaps in a plaintiff's factual averments with unfounded assumptions about what the evidence may show." *Premusca I*, 2022 WL 254341, at *3. Although SCI, Asbell, and GCS, may insist "that the Court use its judicial experience to determine that the requisite threshold amount is satisfied, to do so would be based 'only [on] speculation—and that is impermissible.'" *Id.* (citation omitted).

The pain and suffering allegation set forth in Boyer's Complaint may eventually drive the amount in controversy beyond the $75,000 mark. [Doc. 1-2, ¶ 38]. But, when looking just to her Complaint as well as SCI, Asbell, and GCS's Notice of Removal and the documents they cite in it, the Court has no way to determine the likelihood of that actually occurring. This is especially true given the time elapsed between Boyer's fall and the relatively low amount of medical bills noted in the record and the fact that Boyer didn't specifically seek punitive damages. To find that Boyer's case meets the requisite jurisdictional amount, based on this record, "would be the result of 'unabashed guesswork.'" *Premusca I*, 2022 WL 254341, at *3 (citation omitted). Consequently, SCI, Asbell, and GCS failed to support their assertion of jurisdiction by a

preponderance of the evidence when it comes to the second requirement for diversity jurisdiction. Although the Court doesn't remand this case for the reasons Boyer argued, it must nevertheless be remanded because the record makes it exceedingly clear that the Court simply doesn't have federal subject-matter jurisdiction. *See U.S. Bank Nat'l Ass'n v. Smith*, 693 F. App'x 827, 829 (11th Cir. 2017) (citing *Whole Health Chiropratic & Wellness, Inc. v. Humana Med. Plan, Inc.*, 254 F.3d 1317, 1320–21 (11th Cir. 2001) (noting that that a district court can sua sponte remand a case for lack of subject-matter jurisdiction but cannot sua sponte remand a case because of a procedural defect). Although the parties' citizenship doesn't warrant remand, its amount in controversy absolutely does.

### F. Conclusion

For the reasons explained above, the Court technically **DENIES** Plaintiff's Motion to Remand [Doc. 16] because there *is* complete diversity of citizenship in this case. Nonetheless, the Court finds that it must be **REMANDED** to the State Court of Bibb County, Georgia, for lack of subject-matter jurisdiction.[5] 28 U.S.C. § 1447(c).

**SO ORDERED**, this Friday the 13th day of May, 2022.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[5] Boyer's Motion to Amend [Doc. 15] is **TERMINATED as moot**.